# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| PAMELA MULLIN,<br><br>      Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION,<br>UNICARE LIFE & HEALTH<br>INSURANCE COMPANY, and<br>WHIRLPOOL CORPORATION LONG<br>TERM DISABILITY GROUP NO. 06957,<br><br>      Defendants. | No. C05-1048<br><br>**ORDER** |

_____

This matter comes before the court pursuant to defendants' December 1, 2006 motion for summary judgment (docket number 32) and plaintiff's December 23, 2006 motion for summary judgment (docket number 37). On March 1, 2006, the parties consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (docket number 10).

## I. SUMMARY OF THE ARGUMENTS

The plaintiff, Pamela Mullin ("Mullin") claims that the defendants[1] unreasonably denied the continuation of her long-term disability benefits. Mullin also claims that the defendants engaged in egregious procedural violations which caused a serious breach of defendants' fiduciary duties to Mullin, and deprived her of a "full and fair review" of her claim and appeal, as required by ERISA. Mullin also seeks monetary penalties pursuant to ERISA for the defendants failure to furnish her a copy of the applicable benefits plan in a timely manner.

---

[1] For ease of reference, the defendants will generally be referred to as "the defendants" unless circumstances warrant identifying each defendant individually.

The defendants argue that summary judgment should enter in their favor because the record on review provides substantial evidence to support the termination of long-term disability benefits. That decision, defendants contend, was neither arbitrary or capricious. Defendants further argue that Mullin was not prejudiced by the procedural violations she complains of, and that the remedy for any procedural violations is a determination that the claimant be deemed to have exhausted the administrative remedies available under the plan. Defendants argue that summary judgment should enter in their favor with respect to Mullin's procedural violations claim, as they have never asserted a "failure to exhaust" argument, thereby mooting her claim.

As set forth below, Mullin's motion for summary judgment is denied. Defendants' motion for summary judgment is denied in part and granted in part. This matter is remanded to the Claim Appeal Fiduciary (UniCare) for further proceedings consistent with this opinion.

## II. SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'"

Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).

The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Id.

### III. STATEMENT OF MATERIAL FACTS[2]

#### A. Pertinent Plan Provisions

Whirlpool is a Michigan corporation whose principal place of business is in Benton Harbor, Michigan. Whirlpool provides benefit plans to its employees, including Whirlpool Corporation Long Term Disability Group No. 06957 ("the Plan"), which is governed by ERISA. UniCare Life & Health Insurance Company serves as the claims administrator of this ERISA governed disability benefits plan for the employees of Whirlpool. Mullin was an employee of Whirlpool Corporation and a participant in the ERISA governed benefit plan administered by Uni Care.

The Plan provides, in pertinent part:

> With respect to issues not addressed in the provisions of the plan of benefits or where provisions are ambiguous, including questions of eligibility for benefits, the plan administrator, or other fiduciary designated by the plan sponsor, shall have final authority to make a determination with respect to such issues or such provisions, unless such determination is found to be arbitrary and capricious by a court of appropriate jurisdiction.

---

[2] Because the court is remanding this matter for further proceedings before the Claim Appeal Fiduciary, Mullin's medical history and competing medical opinions will not be set forth in the statement of facts. Rather, the court will include only those facts determinative to its decision.

You are considered totally disabled at any time that you are unable to work because of a disease or injury.

During the first 30 months of a period of disability, you will be considered unable to work if you cannot work at the type of occupation in which you normally engage or for any occupation for which you are eligible, reasonably suited, and qualified to perform and which is offered to you by Whirlpool Corporation.

After the first 30 months of a period of total disability you will be considered unable to work only if you are unable to work at any reasonable occupation. A reasonable occupation is any gainful activity for which you are fitted by your education, training or experience for which you could reasonably become fitted.

Each period of total disability will begin as soon as you are both totally disabled and under the care of a physician. You will not be considered to be under the care of a physician more than 31 days before he has seen you and treated you personally for the disease or injury causing the total disability.

Your period of total disability will end when one of the following occurs: . . .
*You cease to be under the care of a physician
*You fail to provide the most recent proof of the continuance of your total disability or you refuse to be examined by a physician designated by the Company.

In addition, a period of total disability will end at any time after the first 30 months if it is determined that your disability is not at that time caused by a physical impairment which can be demonstrated by clinical or laboratory diagnosis. A mental or nervous condition, for example, is not a physical impairment. The only exception to this rule is that if you are confined as an inpatient in a hospital for a period of more than 30 consecutive days at the end of the first 30 months . . .

The Material Modification effective January 1, 1997 provides that "Hancock/UniCare shall serve as claims administrators. The Agreement By and Between

Whirlpool Corporation and UniCare Life & Health Insurance Company assigns UniCare the responsibility for processing and paying claims. The Administrative Services Agreement provides that UniCare shall serve as the Claims Appeal Fiduciary. In accordance with these responsibilities as Claims Appeal Fiduciary, Unicare has the authority to make a final determination with respect to the interpretation of the Plan.

On September 8, 2005, Defendants UniCare and Whirlpool entered into a written "Claim Fiduciary Amendment," as part of their existing "Administrative Services Agreement." UniCare signed the Claim Fiduciary Amendment on September 8, 2005. Whirlpool and the Plan Administrator signed the document on August 29, 2005. Pursuant to the Claim Fiduciary Amendment, UniCare was appointed the "Claim Appeal Fiduciary" for Whirlpool Corp., effective September 1, 2005. As Whirlpool's Claim Appeal Fiduciary, it was UniCare's duty and responsibility to review denied claims in accordance with Item 6 of the Claim Fiduciary Amendment. Pursuant to Item 6(d) of the Claim Fiduciary Amendment, UniCare was required to review denied claims which UniCare had initially processed under the Administrative Services Agreement.

### B. The Initial Determination and Appeal Process

Mullin was employed by Whirlpool as a Market Training Representative. Mullin claims she was injured on or about September 27 or 28, 2001. On March 30, 2002, Mullin completed an application for Long Term Disability Benefits. On April 26, 2002, Mullin was approved for long term disability benefits, effective April 1, 2002, as she was not able to perform her regular occupation. Pursuant to this determination, Ms. Mullin was "eligible for monthly benefits commencing April 1, 2002 and continuing up to April 1, 2004."

UniCare notified Ms. Mullin in a letter dated October 1, 2003, that pursuant to the Plan, her "own-occupation" period would end on April 1, 2004, and she would be considered "unable to work" after this date only if she was "unable to work at any reasonable occupation."

UniCare's internal claims evaluation report dated April 9, 2004 indicated that it would follow Mullin for six months for "ADLs and updated medical to see if clmt's ability to undergo surgery has changed." UniCare sent Mullin a notice on April 14, 2004 stating, "It has been determined that you satisfy the definition of Total Disability from any occupation at this time. This determination is based upon the current medical facts in your claim file."

On March 23, 2005, UniCare sent a "Disability Claim Service Request-Peer Review" request to Medical Director Solutions, L.L.C., i.e., Dr. Mitchell S. Nudelman, M.D., J.D., F.C.L.M. On March 28, 2005, UniCare sought additional medical records from Dr. Summers, Mullin's treating physician, including recent office records, MRI films, and the March 23, 2004 vascular studies.

In completing his review, Dr. Nudelman consulted with a board certified neurosurgeon, Dr. Lawrence Schlachter, M.D., and issued a letter report dated May 9, 2005, which included the following opinions: there is no objective evidence of any significant progression of lumbar spine disease since 1999, when Mullin was working at her usual occupation with far greater physical demands than a sedentary position; Dr. Mayer, a spine surgeon, found no objective findings to necessitate workplace restriction; Mullin is interested in looking for work and believed herself able to return to work; Mullin had a significant mental nervous component to her condition which was not adequately evaluated or treated.

Dr. Nudelman further opined that there was "not sufficient medical documentation so as to support the claimant's assertion that she has been unable to perform the material and substantial duties of sedentary occupation on the basis of her lumbar spine or knee conditions, or due to a blood clot in her leg, as her treating physician opines." Dr. Nudelman noted that recent vascular studies had not been submitted. Dr. Nudelman never examined Mullin. As of this time, Dr. Nudelman had not consulted a vascular expert. Dr. Nudelman's report notes that Mullin's account of her injury varies somewhat over time. Dr. Nudelman does not note the validity of Mullin's efforts in her functional

capacity assessment, or her treating physician's opinion regarding her motivation and hopes for recovery. Dr. Nudelman also opines that Mullin has a significant mental component to her condition, "for which she has not been adequately evaluated and is not under the care of any appropriate mental health provider."

On May 9, 2005, UniCare recommended denial of future benefits. UniCare determined that Mullin was capable of performing sedentary occupations, and therefore was not totally disabled within the meaning of the policy language. UniCare sent Mullin a letter dated May 31, 2005 notifying her that her claim for long term disability benefits had been denied. The termination letter states, in part:

> If you disagree with our determination and wish to file an appeal of a claim denial, the Employee Retirement Income Security Act of 1974 (ERISA) provides you with the right to appeal. You should write to us within 60 days of this letter, clearly stating your position. If you have other medical information, not previously submitted, which objectively supports your disability, you may submit it for further consideration . . .

The termination letter also notes that Unicare had not considered Mullin's vascular studies because she had not provided them.

Following receipt of the additional medical records from Mullin, UniCare requested medical records directly from provider Dr. Hariri Morteza on June 13, 2005. Dr. Nudelman submitted a supplemental opinion on June 15, 2005, having reviewed the additional medical records submitted by Mullin. Dr. Nudelman's opinion letter states, in part:

> The claimant finally submits the vascular studies of 3/23/04 and advises that she has not seen a vascular surgeon in some time, and at least for the past 12 months. While the study does show occlusive disease that may or may not be consistent with claudication, it in [] of itself is not evidence that the claimant lacks total work capacity. In fact, it appears that there was significant collateral vessel development in the more affected left leg.

7

Dr. Nudelman further opined that Mullin could perform sedentary work, and that, in fact, walking may be beneficial to her health given her leg condition.

On July 28, 2005, in compliance with the appeal procedure described in UniCare's letter of May 31, 2005, Mullin sent a notice of appeal, explaining the grounds for her appeal and seeking review of additional medical records not previously provided. Also on July 28, 2005, Mullin submitted a letter to UniCare appealing the termination of her benefits. Accompanying the appeal letter was Mullin's affidavit which disputed UniCare's contention that Mullin is a caregiver for her aunt and therefore can work. Mullin's aunt had been living in a nursing home for at least five years. Mullin's affidavit further notes that her maximum duration for sitting is approximately 15 minutes. Mullin's vascular reports from June 2005 also accompanied the appeal letter.

On August 10, 2005, Dr. Nudelman submitted an evaluation report reviewing Dr. Summers' letter and detailing the submission of certain of Ms. Mullin's medical records for review by a Board Certified Vascular Surgeon, Dr. Charles Lewinstein, M.D. Dr. Nudelman did not change his opinion, noting, among other things, that Ms. Mullin was able to walk on a treadmill at a 12% incline for five minutes during testing on July 1, 2005. Dr. Nudelman's report also noted that he took account of the recently submitted vascular studies, stating:

> Additionally, I submitted the recent and prior vascular studies and other relevant records to the consultant Vascular Surgeon, who had this to add:
>
> [Per your request] I have reviewed the non-invasive testing and angiogram reports on [the above referenced claimant] as well as multiple letters regarding her health status. My conclusions are the following:
>
> 1) [The claimant] has an SFA-Popliteal occlusion, which is amenable to bypass.
> 2) [The claimant] has a resting ankle/brachial index (ABI) of 0.7, which is adequate for lower extremity perfusion at rest. I do not think she has rest pain as a result of arterial ischemia.

> She certainly can have exercise induced leg pain as suggested by a drop in her ABI to 0.55 with exercise.
> 3) [The claimant] has risk factors for atherosclerosis, which need to be modified - most importantly chronic tobacco abuse.

Dr. Lewinstein's opinion was provided to Dr. Nudelman via e-mail on August 5, 2005. Dr. Lewinstein's e-mail contained a fourth conclusion, i.e., "4) I think it is likely that with appropriate vascular care combined with efforts on Ms. Mullin's part there is no reason she should be disabled by her vascular disease." Prior to this, on August 1, 2005, Dr. Nudelman e-mailed Dr. Lewinstein, seeking clarification and advice regarding a confusing opinion of Mullin's cardiologist. Specifically, Dr. Nudelman e-mailed Dr. Lewinstein to ask why Mullin would "get discomfort at rest?" Dr. Lewinstein responded as follows:

> The arterial occlusions that you mentioned certainly could cause short distance claudication. This would exercise induced symptoms that should in no way interfere with sitting or any occupation that does not involve walking. It does not explain discomfort at rest if, as I understand it, the popliteal artery is open.

In response, Dr. Nudelman provided Dr. Lewinstein with Mullin's arteriogram and the last page of the letter from Mullin's cardiologists, to which Dr. Lewinstein responded: "I could only view the first page. The angiogram report does demonstrate a popliteal artery occlusion. This patient could have rest pain from this. She needs a bypass, not disability."

On August 17, 2005, UniCare corresponded with Mullin's attorney, seeking MRI films not previously submitted by Ms. Mullin. UniCare requested that the MRI films be sent directly to Dr. Nudelman at Medical Director Solutions, L.L.C., in Marietta, Georgia. The letter further states that "if special circumstances require an extension of the [45 day] review period, a decision will be made as soon as possible, but not later than 90 days after receipt of the request for review."

On August 31, 2005, Dr. Nudelman reviewed the additional material submitted after the denial of benefits, and again sought the consultation of board certified neurosurgeon,

Dr. Lawrence Schlachter, M.D. Dr. Nudelman explicitly relied on Dr. Schlachter's opinion, which stated:

> As you requested, I have reviewed the most recent MRI scans of the lumbar spine dated 7/15/05 on the above referenced claimant and compared them to the multiple previous MRI's that were submitted in the past.
>
> The images of course, as would be expected, still show degenerative disc disease at L4-5 with a bulge into the spinal canal eccentric to the right as had been seen on previous images.
>
> Notably, there are no new changes or progressions of disease that would modify my prior assessment of this case. In my medical opinion, nothing in these MRI's would be expected to result in a total loss of functional work capacity and she should still be able to perform a sedentary occupation full time. The only restriction from the spine would be that she should be able to stretch for a few moments or change position periodically during the workday.

Dr. Nudelman modified the actual text provided to him by Dr. Schlachter, consulted Dr. Schlachter regarding the proposed changes, and Dr. Schlachter agreed that the paragraph, as modified, reflected his opinion. Dr. Nudelman's letter did not indicate that he had examined Ms. Mullin's June 2003 vascular studies.

On September 13, 2005, Ms. Mullin's attorney sent UniCare a letter noticing a violation of the 45 day requirement for a decision on appeal. UniCare employee Vikki Harvey responded on September 15, 2005 regarding the need for an extension of the review period on appeal due to special circumstances.

On October 27, 2005, UniCare sent Mullin a letter denying her appeal and confirming the decision that Ms. Mullin was not disabled. The nineteen page letter set forth the reasons for the denial of benefits. The decision on appeal, affirming the termination of Ms. Mullin's long-term disability benefits, indicates that UniCare relied upon the opinions contained in the written reports of an "independent physician reviewer," which reports were dated May 9, 2005, June 15, 2005, August 10, 2005, and August 31,

2005. The "independent physician review" was not explicitly identified as Dr. Mitchell S. Nudelman in the appeal decision, however the reports themselves were in the administrative record and were written by Dr. Nudelman. Also, UniCare reviewed additional documentation submitted by Mullin, and Dr. Nudelman consulted with both a board certified vascular surgeon and a board certified neurosurgeon.

### C. Mullin's Requests for The Plan

Ms. Mullin's attorney made a written request to UniCare to furnish a copy of the Whirlpool Long Term Disability Plan on June 15, 2005. On June 28, 2005, UniCare provided Ms. Mullin with certain documents, including a brochure describing the Plan, in response to the June 15, 2005 request. The documents UniCare provided did not include the Plan, did not identify the plan administrator, contained no language granting deference to the plan administrator, and contained no terms regarding the Plan's procedures for review.

Mullin's attorney sent a letter to UniCare on July 7, 2005, complaining that the documents provided on June 28, 2005 were not sufficient and again requested a copy of the Plan.

On July 29, 2005, UniCare sent Mullin, through her attorney, a letter instructing Mullin to direct her request for a copy of the Plan to Ms. Kimberly Wojahn at Whirlpool Corporation. On August 5, 2005, Mullin made another request for the Plan, this time directed to Ms. Kimberly Wojahn at Whirlpool Corporation. In response, Ms. Wojahn sent Mullin a letter and a document entitled "Whirlpool Salaried Employees Long-Term Disability." This document, which was 16 pages long, was not the Plan. This document provided, in part:

> While every effort has been made to describe your benefit plans completely and accurately, this handbook does not contain a full restatement of all terms and provisions of the plans. If any conflict exists between this handbook and plan documents, then the plan documents will govern.

On October 17, 2005, Ms. Mullin notified the defendants of her intent to sue, and again requested a copy of the Plan. Unicare responded on October 21, 2005, enclosing Plan documents. Whirlpool also responded on October 21, 2005, but did not provide a copy of the Plan.

On October 24, 2005, Ms. Mullin sent Whirlpool a letter again demanding (for the fourth time) a copy of the Plan. On November 23, 2005, the defendants sent, through their attorneys, a letter and copy of a booklet entitled "Whirlpool Flexchoice Benefits" to Mullin. This 90-plus page booklet is the Plan, and contains the language granting the plan administrator final authority to make determinations as to eligibility.

### III. CONCLUSIONS OF LAW
#### A. Applicable Standard of Review

"ERISA itself does not specify a standard of review" for plan administrator's decisions, "however, the Supreme Court has held that a reviewing court should use a de novo standard of review unless the plan gives the 'administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640-41 (8th Cir. 1997) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir. 1996)). If the plan gives such discretionary authority, as is indisputably the case here, the court is to review the plan administrator's decision for abuse of discretion. Cash v. Wal-Mart Group Health Plan, 107 F.3d at 641 (citing Donaho v. FMC Corp., 74 F.3d 894, 897 (8th Cir. 1996) (abrogated on other grounds).

To obtain a less differential review, Mullin must present "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). To satisfy the second prong, Mullin must show that the "conflict or procedural irregularity has 'some

connection to the substantive decision reached.' " Id. (quoting Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996)). In deciding whether "procedural irregularities" occurred, the court will consider whether the eligibility determination was "made without reflection or judgment, such that it was the product of an arbitrary decision or the plan administrator's whim." Parkman v. Prudential Ins. Co. of America, 439 F.3d 767, 772 n.5 (8th Cir. 2006). See also Chronister v. Baptist Health, 442 F.3d 648, 654 (8th Cir. 2006) ("A claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard.") (quoting Woo, 144 F.3d at 110). "To invoke this standard, any alleged procedural irregularity must be so egregious that it might create a 'total lack of faith in the integrity of the decision making process.' " Hillery v. Metropolitan Life Ins. Co., 453 F.3d 1087, 1090 (8th Cir. 2006) (quoting Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998)).

While not disputing that the Plan language vests the plan administrator with the discretion to make eligibility determinations, Mullin argues that a less deferential standard of review, i.e., de novo, should nevertheless apply, because the administrative record demonstrates that the defendants "engaged in wholesale and flagrant violations of the procedural requirements of ERISA", which deprived Mullin of a full and fair review of her claim. Specifically, Mullin claims that the defendants (1) violated 29 C.F.R. § 2560.503-1(h)(3)(i) by failing to provide her with at least 180 days to appeal the termination of her benefits; (2) violated 29 C.F.R. § 2560.503-1(h)(3)(ii) in that UniCare made both the initial decision to terminate Mullin's benefits and the decision on appeal to affirm its decision; and (3) violated 29 C.F.R. § 2560.503-1(h)(3)(v) by consulting Drs. Nudelman and Schlachter both in connection with the decision to terminate benefits and the subsequent appeal. The court will address the alleged irregularities in turn.

1. 60-Day Appeal Period

29 C.F.R. § 2560.503-1(h)(3)(i) provides, in pertinent part:

> The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures [p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination.

Defendants do not dispute that they failed to provide Mullin 180 days to appeal the termination of her benefits, but argue that Mullin has not claimed that her appeal would have successful, or even different, had she been afforded the extra time. The court agrees. This irregularity is not sufficiently egregious so as to warrant a less deferential standard of review. Mullin has not set forth any specifics as to how her appeal would have been better or different if she had been given another 120 days. She merely argues that the shortened appeal process was "detrimental." As to this irregularity, Mullin has satisfied neither prong of the Woo test.

2. UniCare as Decision Maker Initially and on Appeal

29 C.F.R. § 2560.503-1(h)(3)(ii) provides, in pertinent part:

> The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures [p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal; nor the subordinate of such individual.

Defendants argue that Mullin's argument that the same company cannot make both the initial eligibility determination and the decision on appeal should be rejected, as the above regulation instead prohibits that the same "individual" make both determinations, or that a subordinate of the initial decision maker make the decision on appeal. The initial eligibility determination was made by Carol Lynn Barretine, Disability Case Manager. The decision on appeal was made by Vikki B. Harvey, Senior Quality Management Specialist/Appeal Coordinator. The court finds Mullin's reliance on Bard v. Boston

Shipping Ass'n, 471 F.3d 229 (1st Cir. 2006) misplaced, at best. In Bard, the full board made both the initial adverse benefit determination and the decision on appeal, in violation of 29 C.F.R. § 2560.503-1(h)(ii). Here, two different and distinct individuals made the decision. There was no procedural irregularity in this regard.

### 3. UniCare's Use of Dr. Nudelman Initially and on Appeal

29 C.F.R. § 2560.503-1(h)(3)(v) provides, in pertinent part:

> The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . [] the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section [] be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual.

While not disputing its reliance on Dr. Nudelman's opinions both to terminate Mullin's benefits initially, and in denying her appeal, defendants argue that this irregularity is not sufficiently egregious to warrant a less deferential standard of review. Defendants further argue that there is no evidence that this irregularity caused a breach of its duty to Mullin. Defendants note that Dr. Nudelman's reports were not the sole medical opinions it took into account in determining Mullin's claim, i.e., the Functional Capacity Evaluation was consistent with Dr. Nudelman's opinions. Defendants further note that Dr. Nudelman consulted with two different specialists, whose opinions he incorporated into his reports. For his August 10, 2005 report, which UniCare relied upon in denying Mullin's appeal, Dr. Nudelman solicited an opinion from Dr. Lewinstein, a board certified vascular surgeon. For Dr. Nudelman's earlier reports, which UniCare relied on for initially terminating Mullin's benefits, he solicited an opinion from Dr. Lawrence Schlachter, a board certified neurosurgeon. Overall, defendants argue, Mullin's claim file indicates that her claim was thoroughly and thoughtfully considered, noting that additional medical evidence was requested and reviewed, and a Functional Capacity Evaluation was arranged.

The court cannot say, as a matter of law, that this procedural irregularity had no connection to the substantive decision reached. Dr. Nudelman's opinions were undeniably relied upon both in terminating Mullin's benefits initially, and in upholding that decision on appeal. Dr. Nudelman chose the experts with whom he consulted. Dr. Schlachter offered an opinion both at the initial termination level and on appeal. Granted, there was additional evidence in the record, i.e., the FCE and the vocational rehabilitation records, which supported UniCare's decision to terminate Mullin's benefits, but Dr. Nudelman's reports were the "medical" evidence relied upon by UniCare to contradict the opinions of Mullin's treating physician. While the court is convinced that Mullin's claim was thoroughly evaluated, UniCare's failure to obtain an "independent" medical opinion on appeal strongly undermines the court's faith in the integrity of the decision making process. Derksen v. CNA Group Life Assurance Co., 2005 WL 3542878 *11 (D. Minn. 2005) ("The cases decided since 2002 when the 'independent health care professional' regulation went into effect all interpret the regulation narrowly and require an independent evaluation.") (citations omitted). The court must now determine the appropriate remedy, i.e., reversal, remand, consideration under a heightened standard of review, or that Mullin be deemed to have exhausted her administrative remedies.

### B. The Remedy

Defendants argue that, rather than reversal or remand, the applicable remedy for this procedural irregularity is that Mullin be deemed to have exhausted her administrative remedies. In support of its argument, defendants cite "29 C.F.R. 2560.503-1(1)." See Defendants' Resistance to Plaintiff's Counter-Motion for Summary Judgment (docket number 52, p. 10). The court's review of the regulations does not reveal such a section. Nonetheless, defendants have never argued that Mullin failed to exhaust her administrative remedies, and such a remedy bears no relation whatsoever to the admitted irregularity. Thus, the court rejects defendants' argument.

Mullin argues that "[r]emand in the case at hand would be futile as there can only be serious doubt as to whether the defendants would provide the Plaintiff with a fair

evaluation of her eligibility for benefits the second time around." See Plaintiff's Brief in Support of Resistance to Defendants' Motion for Summary Judgment and Plaintiff's Counter-Motion for Summary Judgment (docket number 45, p. 25). The court is not convinced. See Derksen, 2005 WL 3542878 *12 ("When a procedural irregularity existed during the administrative process, it is often appropriate to remand the case to the plan administrator for a decision on the merits, applying the rules established by the court.").

The regulation violated by UniCare had only been effect for three months when Mullin filed her claim. Mullin has provided no evidence of bad faith. The regulations provide that, when faced with an appeal for a claim that was based on a medical judgment, as was Mullin's, review by an "independent health care professional is required." Id. Further, out of an abundance of caution, and given the fact that UniCare did also violate the regulations by allowing Mullin only 60 days to appeal, and by not issuing a decision on appeal within 60 days of receipt of her appeal, the court orders that Mullin be allowed to resubmit her appeal to UniCare, within 180 days of the date of this order. As the court does not find that the underlying administrative record was insufficient to make a determination, Mullin's request that she be permitted to introduce additional evidence which demonstrates her eligibility is denied. The pertinent medical records were produced by Mullin in a piecemeal fashion, but have all now been submitted. Using the record as established, Mullin can recast her appeal as she sees fit. UniCare will then render a decision on Mullin's appeal in strict compliance with 29 C.F.R. § 2560.503-1(i). Neither Drs. Nudelman, Lewinstein, nor Schlachter shall be consulted in connection with Mullin's appeal. Likewise, neither Dr. Nudelman's report on appeal, nor any underlying documentation or communication from Drs. Nudelman, Lewinstein, or Schlachter shall be part of the administrative record on appeal.

### C. **Defendants' Untimely Production of The Plan**

Mullin requested a copy of the Plan on June 15, 2005, on July 7, 2005, on August 5, 2005, and again on October 24, 2005. In response, Mullin received various administrative documents, and instructions to direct her request to a different party, but

not a copy of the Plan. Finally, Whirlpool provided a copy of the Plan on November 23, 2005. Under 29 U.S.C. § 1132(c)(1)(B), the court may, in its discretion, levy a $110 daily fine against any administrator who fails, within 30 days of the request, to provide a copy of the Plan. Mullin seeks a monetary penalty of $14,410, which represents $110 for each of the excess 131 days it took defendants to provide her a copy of the plan. Alternately, assuming that UniCare was under no obligation to provide Mullin with a copy of the Plan, she seeks $8,800, which represents $110 for each of the 80 excess days it took Whirlpool to provide the Plan. Mullin claims that she was prejudiced by this delay because she was unable to ascertain the identity of the plan administrator until she received a copy of the Plan, and she was unable to ascertain with any certainty, either before the deadline for internal appeal, or the appeal to this court, whether the Plan afforded the plan administrator discretionary review, the actual terms of the Plan, and the appeal procedures.

Defendants assert that the imposition of civil penalties is unnecessary in light of its prompt, good faith efforts to comply with Mullin's document requests. Defendants note that it never refused to provide the requested documents, but rather, responded to Mullin and attempted to comply and direct Mullin to the proper contact person, rather than merely forwarding her requests.

The defendants' inability to provide the requested document on the first try is inexplicable to the court. That neither UniCare nor Whirlpool employees would have copies of the actual "Plan" ready and available for production at all times defies logic. The court cannot fathom that such requests for copies of the "Plan" are uncommon or complex. That said, the court does not see that Mullin suffered actual harm by this lapse. Defendants have never argued that Mullin failed to exhaust her remedies, no deadlines were missed, and no claims were dismissed. The proper parties are all before the court. Thus, while defendants' conduct in this regard is not condoned, the court declines to exercise its discretion to award monetary penalties.

18

Upon the foregoing,

IT IS ORDERED that defendants' motion for summary judgment (docket number 32) is denied in part and granted in part, as set forth above. Mullin's motion for summary judgment (docket number 37) is denied. This matter is remanded to the Claim Appeal Fiduciary (UniCare) for further proceedings consistent with this opinion.

February 20, 2007.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT